**In re Juan Ortiz MARTINEZ and Ellyha Torres, Debtors.**

Civil No. 92–1925 (JP).
Bankruptcy No. 85–01691 (ESL).

United States District Court,
D. Puerto Rico.

May 15, 1996.

Irving K. Hernández, Río Piedras, PR, for Appellant.

Viviana Rodríguez Ortiz, Hato Rey, PR, for Appellee Treasury Dept. of the Commonwealth of Puerto Rico.

## OPINION AND ORDER

PIERAS, District Judge.

The Court has before it an appeal pursuant to 28 U.S.C. § 158(a) from the Opinion and Order of the Bankruptcy Court, dated January 17, 1992, denying debtors' request for the imposition of a monetary judgment for willful violation of the automatic stay against the Department of Treasury of the Commonwealth of Puerto Rico (hereinafter referred to as "Treasury"). The issue before the Court is whether Treasury waived its sovereign immunity such that the Bankruptcy Court had jurisdiction over the arm of the government. The Bankruptcy Court determined that Treasury had not filed a proof of claim in debtors' case, therefore Treasury had not waived its sovereign immunity under section 106(a) of the Bankruptcy Code. Consequently, the Bankruptcy Court determined that it had no jurisdiction to find Treasury liable for actual monetary damages for a willful violation of the bankruptcy stay. After carefully reviewing the record and the arguments presented, the Bankruptcy Court's decision is hereby **AFFIRMED.**

### I. SUMMARY OF STIPULATED FACTS

On November 22, 1985, debtors Juan Ortiz Martínez and Ellyha Torres filed a voluntary petition for bankruptcy relief under Chapter 13 of the Bankruptcy Code. On April 23, 1986, a reorganization plan was confirmed by the Bankruptcy Court. Debtors had listed a debt to the Department of the Treasury of the Commonwealth of Puerto Rico in the amount of $16,000.00 in their schedule of creditors and debts. Nonetheless, Treasury never filed a proof of claim in the bankruptcy proceedings.

On December 15, 1989, Treasury filed a tax lien over debtors real property in the local, Puerto Rico property Registrar, and thereafter notified debtors of the lien. Treasury originally calculated its lien as covering the years of 1975 to 1987, in the amount of $102,951.42, divided as follows: approximately $58,754.98 in pre-petition income tax from 1975–1984; approximately $33,511.37 in post-petition income tax from 1985–1989. Treasury subsequently clarified that these

amounts had incorrectly included amounts for a time period which was precluded by the statute of limitations. Treasury corrected the erroneous notification as follows: approximately $21,179.83 in pre-petition income tax from 1982 to 1984; approximately $36,701.09 in post-petition income tax from 1985 to 1987; the tax incurred from 1975–1981 had prescribed. Finally, Treasury asserted that none of these amounts were subject to discharge because Treasury asserted that it had been improperly notified of the debtors' petition. Therefore, Treasury asserted that the final amount of its lien over debtor's property was for a corrected total of $57,880.92.

On May 17, 1991, debtors filed an application for an order to show cause as to why actual and punitive damages should not be assessed against Treasury for willful violation of the automatic stay, due to the post-petition filing of the tax lien on debtors' property. On July 23, 1991, the Bankruptcy Court held a hearing to consider debtors' motions, and thereafter allowed the parties forty-five days to address two questions: 1) whether this proceeding should be filed as an adversary proceeding, and 2) whether the Bankruptcy Court could assess damages against an instrumentality of the government of the Commonwealth of Puerto Rico. Moreover, the Bankruptcy Court made findings of fact that Treasury was aware that debtors had filed a voluntary petition in bankruptcy because it had received a copy of the petition, even if the petition did not include Mr. Juan Manuel Ortiz's social security number, and because debtors had visited Treasury in an attempt to notify Treasury of the bankruptcy petition.

On January 17, 1992, the Bankruptcy Court issued the Opinion and Order which is the subject of this appeal. The Bankruptcy Court held that Treasury had not filed a proof of claim against debtors' estate, therefore, Treasury had not waived its right of sovereign immunity under 11 U.S.C. § 106(a). Moreover, the Bankruptcy Court determined that it lacked the authority to impose a monetary sanction against an instrumentality of the government of the Commonwealth of Puerto Rico, pursuant to 11 U.S.C. § 106(c). Finally, the Court refused

to determine the validity of Treasury's lien over debtor's property, finding that this issue should be determined in an adversary proceeding, pursuant to Rule 7001(2) of the Bankruptcy Rules. On February 7, 1992, debtors filed their first notice of appeal which was designated Civil Case No. 92–1596 (JP). Simultaneous with the notice of appeal, debtors filed a motion for reconsideration with the Bankruptcy Court. This Court dismissed debtors' first appeal in Civil Case No. 92–1596 (JP), because it had been filed prior to the Bankruptcy Court's decision of the debtor's motion for reconsideration, and therefore the notice of appeal was invalid pursuant to Rule 8002(b) of the Bankruptcy Rules.

Upon considering debtors' motion for reconsideration, the Bankruptcy Court made additional findings of fact, granted the motion, and held that Treasury had violated the automatic stay of 11 U.S.C. § 362(a). Therefore, the Court awarded debtors attorneys' fees of $1,000.00 plus costs.

Immediately thereafter, Treasury filed a motion for reconsideration, which the Bankruptcy Court denied on May 28, 1992. Also on May 28, 1992, the debtors filed their second notice of appeal, appealing the Bankruptcy Court's original Order denying the imposition of monetary damages against Treasury for willful violation of the automatic stay.

## II. STANDARD OF REVIEW

■ The Bankruptcy Court's findings of fact shall be upheld unless they are clearly erroneous, and the Bankruptcy Court's conclusions of law, shall be reviewed de novo. *T I Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir.1995).

## III. DISCUSSION

The issue on appeal is whether the Department of Treasury of the Commonwealth of Puerto Rico had waived its Eleventh Amendment right of sovereign immunity, such that the Bankruptcy Court would have jurisdiction over debtors' claim that Treasury had willfully violated the automatic stay.

## A. AUTOMATIC STAY

▪ Debtors contend that Treasury willfully violated the automatic stay by placing a lien on the debtors' property, and therefore is liable for monetary damages to debtors. Debtors further contend that Treasury waived any claim to sovereign immunity even though it never filed a proof of claim in the debtors' Chapter 13 bankruptcy case.

▪ The moment that a debtor files a petition in bankruptcy, creditors of the debtor estate are prevented from taking any act to obtain possession of the estate property, to create a lien against the estate property, or to collect, assess, or recover a claim against a debtor that arose before the commencement of the debtor's bankruptcy case. 11 U.S.C. § 362(a)(3),(4) and (6). This provision of the Bankruptcy Code, referred to as the automatic stay, "gives a 'breathing spell' to the debtor and stops 'all collection efforts, all harassment, and all foreclosure actions.'" *Tringali v. Hathaway Machinery Co., Inc.*, 796 F.2d 553, 562 (1st Cir.1986) (citing legislative history). For this reason, the stay has been referred to as an "essential foundation block of the bankruptcy rebuilding process," *In re Patterson*, 125 B.R. 40, 47 (Bankr. N.D.Ala.1990). In fact, "Congress intended that the automatic stay be 'one of the fundamental debtor protections provided by the bankruptcy laws,'" *In re Solis*, 137 B.R. 121, 124 (Bankr.S.D.N.Y.1992) (citing legislative history).

The Bankruptcy Code provides for remedies of the violation of the automatic stay:

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages. 11 U.S.C. § 362(h).

In the case at bar, it is clear that Treasury violated the debtors' automatic stay when Treasury filed a tax lien over debtors' property after the Chapter 13 petition had been filed. Debtors contend that this violation of the stay was willful because Treasury had actual knowledge that debtors had filed their bankruptcy petition at the time that Treasury registered its lien on debtors' property.

Therefore, debtors requested that the Bankruptcy Court permit debtors to recover actual damages, costs and attorneys' fees from Treasury.

## B. WAIVER OF SOVEREIGN IMMUNITY

▪ Treasury contends that it has not waived its right to sovereign immunity protected by the Eleventh Amendment, therefore, the Bankruptcy Court does not have jurisdiction to contemplate debtors' request for the imposition of a monetary judgment against Treasury. The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

" 'The very object and purpose of the 11th Amendment were to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties,'" *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy*, 506 U.S. 139, 146, 113 S.Ct. 684, 688–89, 121 L.Ed.2d 605 (1993) (citing *In re Ayers*, 123 U.S. 443, 8 S.Ct. 164, 31 L.Ed. 216 (1887)). For the purposes of Eleventh Amendment sovereign immunity analysis, the Commonwealth of Puerto Rico is treated as a State. *Ramírez v. Puerto Rico Fire Serv.*, 715 F.2d 694, 697 (1st Cir.1983); *In re San Juan Dupont Plaza Hotel Fire Litigation*, 888 F.2d 940, 942 (1st Cir.1989); *De León López v. Corporación Insular de Seguros*, 931 F.2d 116, 121 (1st Cir.1991). The scope of the Eleventh Amendment protection extends to the government of the state itself, and to "arms" of the state, *Metcalf & Eddy v. Puerto Rico Aqueduct & Sewer Authority*, 991 F.2d 935, 939 (1st Cir.1993). There is no dispute in the case at bar that Treasury is entitled to Eleventh Amendment sovereign immunity.

▪ It is a fundamental tenet of federal jurisdiction that federal courts are courts of limited jurisdiction, and as such are "authorized to do only those things provided by the Constitution and federal law." *In re York–Hannover Developments, Inc.*, 190 B.R. 62,

65 (Bankr.E.D.N.C.1995). The Eleventh Amendment limits the scope of subject matter jurisdiction of federal courts, granted to federal courts by Section 2 of Article III of the United States Constitution, by withdrawing from the federal court's jurisdiction any case between a state and citizens of another state. *Id.* at 64.

Nonetheless, a federal court may exercise jurisdiction over a case between a state and a citizen of another state, if either the state waives its claim of immunity or if Congress abrogates the states' claim of immunity. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99, 104 S.Ct. 900, 907–08, 79 L.Ed.2d 67 (1984).

"In order to determine whether Congress has abrogated the States' sovereign immunity, we ask two questions: first, whether Congress has 'unequivocally expresse[d] its intent to abrogate the immunity,' and second, whether Congress has acted 'pursuant to a valid exercise of power,'" *Seminole Tribe of Florida v. Florida*, —— U.S. ——, ——, 116 S.Ct. 1114, 1123, 134 L.Ed.2d 252 (1996) (citing *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985)).

In the case at bar, at the time that the parties filed their briefs, the Bankruptcy Code specifically provided that:

A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of which such governmental unit's claim arose. 11 U.S.C. § 106(a).

The Bankruptcy Code defines a "government unit" as United States; States; Commonwealth; District; Territory; .... or instrumentality of the United States ... Commonwealth, 11 U.S.C. § 101(27). Therefore, this provision purports to provide for the waiver of sovereign immunity of both the federal and state government.

At the time that appellant filed this appeal, there existed confusion among the courts, however, concerning whether a governmental unit could have been deemed to have waived its right to sovereign immunity under § 106(a), if the governmental unit had not filed a proof of claim in the debtors' bankruptcy case. The Supreme Court has stated in obiter dicta that the filing of a claim will waive sovereign immunity under § 106(a) and suggests that the filing of a claim is necessary for finding a strict waiver: "Neither § 106(a) nor § 106(b) provides a basis for petitioner's actions here, since respondents did not file a claim in either Chapter 7 proceeding," *Hoffman v. Conn. Dept. of Income Maintenance*, 492 U.S. 96, 101, 109 S.Ct. 2818, 2822–23, 106 L.Ed.2d 76 (1989).

Nevertheless, several courts rejected this dicta of the Supreme Court, and relied instead upon an interpretation of the plain terms of the statutory provisions to hold that the filing of a proof of claim was *not* a prerequisite. *See In re Craftsmen*, 163 B.R. 88 (Bankr.N.D.Tex., 1993) ("the filing of a proof of claim does not serve as a prerequisite to a waiver of sovereign immunity pursuant to § 106(a)); *In re Operation Open City*, 170 B.R. 818 (S.D.N.Y.1994); *In re T.F. Stone Companies, Inc.*, 170 B.R. 884 (Bankr. N.D.Tex.1994). *In Matter of Washington*, 172 B.R. 415 (Bankr.S.D.Ga.1994) ("All that is necessary is that the governmental unit possess a claim, not that it assert it in any fashion"); *In re Boldman*, 148 B.R. 874 (Bankr.C.D.Ill.1993).

On October 22, 1994, Congress amended § 106(a) under the Bankruptcy Reform Act of 1994, Publ.L. No. 103–394, 108 Stat. 4106 (1994) to read as follows:

A governmental unit *that has filed a proof of claim in the case* is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose. (Emphasis added). 11 U.S.C. § 106(b).

Congress specifically provided that the amendments to § 106 apply retroactively. *Matter of Merchants Grain, Inc.*, 59 F.3d 630, 634 (7th Cir.1995), *cert. granted and judgment vacated, Ohio Agricultural Commodity v. Mahern*, —— U.S. ——, 116 S.Ct. 1411, 134 L.Ed.2d 537 (1996). Therefore, Congress unequivocally requires that the

230

governmental unit file a proof of claim in the bankruptcy case before the bankruptcy court may deem that the governmental unit waived its right to sovereign immunity. This clarification effectively overruled prior case law holding that the filing of a proof of claim was not necessary. *In re HPA Associates,* 191 B.R. 167, 171–72 (9th Cir. BAP 1995). Thus, after the 1994 amendment, Congress made an "unmistakenly clear" statutory statement abrogating States' right to sovereign immunity, if the governmental unit filed a proof of claim.

Based upon the facts of the case, Treasury did not file a proof of claim in debtors' bankruptcy case. Therefore, according to the statutory provision, Treasury did not waive its claim to sovereign immunity, and it is not amenable to suit for willful violation of the stay. Although the issue as presented by the parties in the case at bar is hereby disposed, it is important to take note of the effect of a recent decision from the Supreme Court of the United States of America, and to analyze the effect of this decision on the issue in the case at bar.

■■■ The second stage of the inquiry into congressional abrogation of Eleventh Amendment analysis requires the Court to determine whether Congress' unequivocal statement purporting to abrogate state sovereign immunity was taken pursuant to a valid exercise of Congressional power. The Supreme Court has recently held that Congress does not have constitutional authority to abrogate the States' Eleventh Amendment right to sovereign immunity, pursuant to the Bankruptcy Clause. *Ohio Agricultural Commodity v. Mahern,* —— U.S. ——, 116 S.Ct. 1411. The Supreme Court did not analyze the question of Congressional authority specifically as it applies to the Bankruptcy Clause, Article I, clause 8. It merely remanded based upon its decision that Congress does not have authority under the Indian Commerce Clause, Article I, Section 8, clause 3, to abrogate the States' Eleventh Amendment protection of sovereign immunity. *Seminole,* —— U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

Prior to this recent decision of the Supreme Court, the majority of courts which had analyzed this issue, held that Congress may abrogate the States' Eleventh Amendment immunity pursuant to its legislating authority accorded by Article I's Bankruptcy Clause, which reads:

> "[t]he Congress shall have the power ... [t]o establish ... uniform Laws on the subject of Bankruptcies through the United States." Article I, clause 8.

*See In re Merchants Grain, Inc.,* 59 F.3d 630, 636 (7th Cir.1995); *In re McVey Trucking, Inc.,* 812 F.2d 311 (7th Cir.), *cert. denied sub nom. Edgar v. McVey Trucking Inc.,* 484 U.S. 895, 108 S.Ct. 227, 98 L.Ed.2d 186 (1987).

■■■ The Supreme Court, however, has clearly stated that the prior analysis is erroneous. "The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction." *Seminole,* —— U.S. at —— ——, 116 S.Ct. at 1131–32. Therefore, the Supreme Court specifically found § 106 of the Bankruptcy Code, as it purports to apply to governmental units of State and Commonwealth governments, an unconstitutional violation of States' right to sovereign immunity protected by the Eleventh Amendment.

## IV. CONCLUSION

Treasury has not voluntarily waived its claim of sovereign immunity and consented to be sued in federal court by debtors for violation of the stay. Therefore, the Bankruptcy Court lacks jurisdiction over debtors claim against Treasury for willful violation of the automatic stay. Consequently, the Opinion and Order dated January 12, 1992, finding that the Bankruptcy Court did not have jurisdiction to find a monetary judgment against Treasury is hereby **AFFIRMED.**

IT IS SO ORDERED.