In re ARECIBO COMMUNITY HEALTH CARE, INC., Debtor.

Carlos Rodriguez Quesada, Appellant,

v.

Commonwealth of Puerto Rico Department of Health, et al., Appellee.

No. Civ. 98–1625(SEC).

United States District Court, D. Puerto Rico.

March 31, 1999.

Igor Domínguez–Pérez, Hato Rey, Puerto Rico, for appellant.

Isabel Abislaimán–Quilez, García & Fernández, Hato Rey, Puerto Rico, for appellee.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is an appeal (Dockets # 1, 7) taken by Carlos Rodríguez Quesada, trustee for debtor Arecibo Community Health Care, Inc. (the "trustee"), of an order from the United States Bankruptcy Court for the District of Puerto Rico ("Bankruptcy Court") entered on April 18, 1998. In its order, issued in Case No. 95–04594(GAC), the Bankruptcy Court dismissed the adversary proceedings in Case No. 95–0150(GAC), commenced by the trustee against the Department of Health of the Commonwealth of Puerto Rico ("DOH") and the "Administración de Facilidades y Servicios de Salud" ("AFASS") to recover monies allegedly owed by DOH and AFASS to the estate. The Bankruptcy Court dismissed the adversary proceedings pursuant to its determination that Sections 106(a) and 106(b) of the Bankruptcy Code, which provide for abrogation of a state's Eleventh Amendment sovereign immunity under certain circumstances, are unconstitutional and that DOH and AFASS enjoy sovereign

immunity which precludes the trustee's suit for damages against said entities.

For the reasons stated below in this Opinion and Order, the Bankruptcy Court's decision is **AFFIRMED IN PART** and **REVERSED IN PART** and this action **REMANDED** for further proceedings consistent with this Opinion and Order.

**Factual Background**

The instant appeal presents an issue of law for the Court, namely, whether Sections 106(a) and 106(b) of the Bankruptcy Code are unconstitutional abrogations of a state's sovereign immunity. However, we shall recount the basic facts as they were summarized by the bankruptcy court, insofar as they will illustrate the Court's analysis of the statutory provisions at issue.

Debtor initiated voluntary bankruptcy proceedings under Chapter 11 of the Bankruptcy Code on July 2, 1991, when defendants DOH and AFASS terminated the contract with debtor for the operation of the Arecibo Regional Hospital. Subsequent to the termination of the contract, on June 30,1991, defendants filed suit against the debtor in the Superior Court of Puerto Rico, Arecibo Part. Due to the debtor's filing of the bankruptcy petition, defendants appeared before the Bankruptcy Court and sought a determination that the contract had been terminated pre-petition; the Bankruptcy so decided on August 22, 1991. Pursuant to an appeal by the debtor, this Court affirmed the Bankruptcy Court's determination that the contract had been terminated pre-petition. The First Circuit Court of Appeals dismissed the debtor's appeal.

Defendants filed a proof of an unsecured claim in the bankruptcy case in the amount of $1,650,449.16 on November 15, 1991, for "moneys received by debtor for [defendants] due to services rendered to outpatients and in-patients and those services were not rendered by debtor." While the appeals process was pending, debtors sought an order in the Superior Court of Arecibo for the turnover of the hospital facilities, which was granted by said court; defendants took possession of the facilities on January 22, 1992. Defendants have been in control of the day-to-day management of the facilities since that time.

On February 14, 1994, the bankruptcy case was converted to Chapter 7 and Carlos Rodriguez Quesada was appointed the Chapter 7 trustee on February 24, 1994. The trustee filed the adversary proceeding at issue in this appeal on December 29, 1995, seeking the sum of $8,204,494.48 from defendants, plus interest since 1991, as well as attorneys' fees and costs.

**Procedural Background**

This Court has jurisdiction to entertain this appeal pursuant to 28 U.S.C. § 158(a). Appellant trustee did not consent to jurisdiction by the Bankruptcy Appellate Panel as required under 28 U.S.C. § 158(b)(1).

The Bankruptcy Court determined that 11 U.S.C. §§ 106(a) and 106(b) were unconstitutional abrogations of a state's Eleventh Amendment immunity and thus would not be applied by the Court to determine whether DOH and AFASS had waived their Eleventh Amendment immunity. The Bankruptcy Court stated, without deciding, that "[t]he trustee's suit against the defendants is arguably a compulsive counterclaim pursuant to Fed. R.Civ.P. 13(a) as it arises out of the same transaction or occurrence that is the subject matter of the defendants' claim against the estate." **(Docket # 7, page 79).**

In its decision dismissing the adversary proceedings, the Bankruptcy Court held that the U.S. Supreme Court's decision in *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), where the Court held that Congress could not abrogate the States' Eleventh Amendment immunity pursuant to Article I and could only do so pursuant to the Fourteenth Amendment, mandated a finding that Congress' abrogation of the States' Eleventh Amendment immunity under § 106(a) was unconstitutional.

Accordingly, the Bankruptcy Court determined that 11 U.S.C. § 106(b) must also fall because no meaningful distinction could be made between § 106(a)'s abrogation language and § 106(b)'s waiver language. Citing *In re C.J. Rogers,* 212 B.R. 265 (E.D.Mich.1997), the Bankruptcy Court agreed with that court's determination that "if Congress cannot abrogate a state's right to sovereign immunity, then Congress cannot provide for a conditional waiver, which amounts to language of abrogation, either." **(Docket # 7, page 77).**

Finding that §§ 106(a) and 106(b) were unconstitutional, the Bankruptcy Court determined that the Commonwealth of Puerto Rico had not voluntarily waived its Eleventh Amendment immunity through its actions in the instant case. The Court found that the filing of the proof of claim only waived the Commonwealth's sovereign immunity with respect to the adjudication of that claim. To that end, it stated that "to the extent that the defendants are claiming against the debtor's estate, the trustee may object to the claim and seek to set-off, up to the amount of the defendants' claim, the sums which the trustee alleges are owed to the estate. The trustee may not, however, seek to obtain an affirmative money judgment against the defendants in federal court without the consent of the Commonwealth of Puerto Rico." **(Docket # 7, page 81).**

The trustee appealed the Bankruptcy Court's dismissal of the adversary proceedings and has designated the following three issues on appeal:

1. The Bankruptcy Court committed reversible error in determining that the defendants, by filing a proof of claim did not waive their immunity under 11 U.S.C. § 106(b), and dismissed the complaint, instead of finding that the adversary proceeding constituted an objection to the claim in the form of a compulsory counterclaim as provided by Rule 13 of the Federal Rules of Civil Procedure applicable to bankruptcy proceedings under Rules 7002 and 7013 of the Bankruptcy Rules of Procedure.

2. The Bankruptcy Court committed reversible error when it found that the Commonwealth of Puerto Rico did not affirmatively waive its sovereign immunity with its active participation and conduct by filing contested matters and appeals and actively participating during the Chapter 11 and the adversary proceedings heard before the Bankruptcy Court.

3. The Bankruptcy Court erred in determining that Title 11, U.S.C., Sections 106(a) and 106(b) are unconstitutional.

### Standard of Review

Rule 8013 of the Federal Rules of Bankruptcy Procedure provides that a reviewing court may affirm, modify or reverse a bankruptcy court's judgment, order, or decree, or it may remand with instructions for further proceedings. Fed.R.B.P. 8013.

The Bankruptcy Court's findings of fact shall be upheld unless they are clearly erroneous, and the Bankruptcy Court's conclusions of law shall be reviewed *de novo. T.I. Federal Credit Union v. DelBonis,* 72 F.3d 921, 928 (1st Cir.1995). This standard is the same as an appellate court's review of a district court order. *In re Savage Industries,* 43 F.3d 714, 719 (1st Cir.1994).

### Applicable Law/Analysis

### Section 106(a)—An Abrogation of the States' Eleventh Amendment Immunity

Title 11, § 106(a) as amended provides, in relevant part, that "[n]otwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following: (1) Section ... 542 ... of this title...." Section 106(a) is a blanket abrogation clause, through which Congress has clearly stated that it seeks to void states' Eleventh Amendment immunity under various provisions of the Bankruptcy Code. *See generally,* Teresa K. Goebel, *In the Aftermath*

*of Seminole: Waiver of Sovereign Immunity under Section 106(b) of the Bankruptcy Code,* 15 Bankr.Dev.J. 151 (1998); Joseph F. Riga, *State Immunity in Bankruptcy After Seminole Tribe v. Florida,* 28 Seton Hall L.Rev. 29 (1997); Justin v. Switzer, *Did They Really Think This Over? Seminole Tribe v. Florida and the Bankruptcy Code,* 34 Hous.L.Rev. 1243 (1997).

■ In light of the Supreme Court's decision in *Seminole Tribe, supra,* most courts that have addressed § 106(a)'s constitutionality have found that it is an unconstitutional abrogation of states' Eleventh Amendment immunity.[1] In fact, one commentator has noted that "[t]he courts that have found § 106(a) to be constitutional are the few dissenters among a majority of courts which have enacted the rationale of Seminole to find that Congress was not acting pursuant to a valid exercise of power when it enacted § 106(a)." Katrina A. Kelly, *In the Aftermath of Seminole: Waiver of Sovereign Immunity under Section 106(b) of the Bankruptcy Code,* 15 Bankr.Dev.J. 151, 167 (1998). This Court has also held that Section 106(a) is unconstitutional in light of the Supreme Court's holding in *Seminole Tribe. In re Martinez,* 196 B.R. 225 (D.P.R.1996) (Pieras, J.). In that decision, the Court held that the Supreme Court's holding in *Seminole Tribe* mandated the conclusion that § 106(a) was "an unconstitutional violation of States' right to sovereign immunity protected by the Eleventh Amendment." 196 B.R. at 230.

The few courts that have found § 106(a) constitutional did so after determining that contrary to the statute at issue in *Seminole Tribe,* which was enacted pursuant to Congress' Article I powers, § 106(a) was enacted pursuant to Congress' faculties under the Fourteenth Amendment and thus did not come within the purview of the Court's holding in *Seminole Tribe. See, In re Southern Star Foods, Inc.,* 190 B.R. 419 (Bankr.E.D.Okl.1995) (holding that Congress had enacted § 106(a) pursuant to § 5 of the Fourteenth Amendment which would make it a permissible abrogation of Eleventh Amendment immunity, as reaffirmed by the Supreme Court in *Seminole Tribe ). See also In re Straight,* 209 B.R. 540 (D.Wy.1997); *In re Burke,* 203 B.R. 493 (Bankr.S.D.Ga.1996); *In re Headrick,* 200 B.R. 963 (Bankr.S.D.Ga. 1996).

■ This court, however, agrees with Judge Pieras' interpretation regarding the constitutionality of § 106(a), finding that pursuant to the Supreme Court's determination in *Seminole Tribe,* § 106(a)'s blanket abrogation of states' sovereign immunity is unconstitutional. Furthermore, we find the bankruptcy court's determination in *In re NVR, L.P.,* 206 B.R. 831 (Bankr. E.D.Va.1997), that § 106 of the Bankruptcy Code was not enacted pursuant to Section 5 of the Fourteenth Amendment, to be persuasive. 206 B.R. at 843. The *NVR* court found that Congress did not identify Section 5 of Fourteenth Amendment as the source of authority for enacting § 106 and that significantly, there is nothing about the Act that connects it to the Fourteenth Amendment's recognized aims. *Id.* at 840. We agree with said court, as well as with the Sixth Circuit Court of Appeals: "If we were to say that an act is valid if it is rationally related to achieving equal protection of the laws, then § 5 becomes a license to Congress to pass any sort of legislation whatsoever." *Wilson–Jones v. Caviness,* 99 F.3d 203, 209 (6th Cir.1996).

---

1. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although by its terms, the Eleventh Amendment does not prohibit suits against a State by its own citizens, the Supreme Court has held that its reach extends to suits instituted against a state by its own citizens. *See Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (collecting cases).

*See also In re Sacred Heart Hospital of Norristown,* 133 F.3d 237, 244 (3d Cir. 1998); *In Matter of Estate of Fernandez,* 123 F.3d 241 (5th Cir.1997).

Because we find that Congress enacted § 106(a) pursuant to its Article I powers, rather than pursuant to its faculties under the Fourteenth Amendment, we must also find that § 106(a) is an unconstitutional abrogation of the states' Eleventh Amendment immunity. We thus affirm the Bankruptcy Court's holding, insofar as it determined that § 106(a) is unconstitutional. Our holding that § 106(a) is unconstitutional does not end the inquiry, however. We must now turn to § 106(b) to determine whether it, too, is an unconstitutional abrogation of states' sovereign immunity, or whether, instead, it is a valid waiver provision.

**Section 106(b)—Provision Setting Conditions for Waiver of Sovereign Immunity**

Section 106(b) provides that "[a] governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose." 11 U.S.C. § 106(b).

A commentator has noted that "[t]he congressional purpose behind effecting a waiver of sovereign immunity through a state's filing of a proof of claim was to prevent the inequity of allowing a state to receive a distribution from the bankruptcy estate without subjecting itself to liability within the scope of compulsory counterclaims." Kelly, *supra,* at 170. She has also noted that "[t]he requirement that the estate's claim be transactionally related to the governmental unit's claim is a reflection of the tension between the unfairness which would result if the state was not subjected to this limited liability and the unfairness which would result if the state could be subjected to unlimited liability." *Id.*

There is a split of authority regarding whether § 106(b) is an abrogation provision, which would render it invalid along with § 106(a), or a waiver provision, which would be permitted under the rationale of *Seminole Tribe.*

On the one hand, some courts have found that the waiver language of § 106(b) is also an invalid abrogation of states' sovereign immunity. For example, the *C.J. Rogers* court found that Congress' waiver language in § 106(b) was "simply a subterfuge to circumvent the 'no abrogation' doctrine and thereby, do indirectly what Congress may not now ... do directly." *C.J. Rogers,* 212 B.R. at 271. It thus found that the waiver language in § 106(b) was the functional equivalent of the abrogation language contained in § 106(a):

> Put simply, whether Congress says "abrogate" or "deem to be waived" it clearly intends abrogation because either phrase has the same substantive and practical effect, namely Congress alone is determining when States will be subject to suit. Accordingly, the Court finds that Congress has expressed a clear intent to abrogate state sovereign immunity in § 106(b).

*Id.*

The Fourth Circuit Court of Appeals had earlier reached a similar conclusion. In *In re Creative Goldsmiths of Washington, D.C., Inc.,* 119 F.3d 1140 (4th Cir. 1997), the Court found that:

> [b]ecause 11 U.S.C. § 106(a) purports to abrogate state immunity also for § 106(b), our analysis [regarding Congress' intent to abrogate under § 106(a) ] likewise applies to § 106(b). But even the language of 11 U.S.C. § 106(b) itself—that a state is "deemed to have waived sovereign immunity"— amounts to language of abrogation.

*Id.* at 1147. *See also NVR,* 206 B.R. at 839 ("[I]nsofar as Congress undertook in revised ... § 106(b) ... to displace or to modify the meaning ascribed to the Eleventh Amendment by the courts, its

endeavor must be deemed an attempted abrogation of the states' constitutional immunity").

On the contrary, some courts have distinguished between § 106(a)'s abrogation language and § 106(b)'s waiver language, finding that § 106(b) is valid because it requires affirmative action on the part of a state before its Eleventh Amendment immunity can be deemed to be waived, contrary to § 106(a) which provided for a blanket abrogation regardless of the state's conduct.[2]

In a recent decision, the Tenth Circuit Court of Appeals held that the abrogation language in § 106(a) is quite different from the waiver language contained in § 106(b). *In re Straight,* 143 F.3d 1387 (10th Cir. 1998). To that end, it stated:

> Unlike § 106(a) which purports to abolish sovereign immunity across the board, § 106(b) leaves the choice to the governmental unit. It can eschew bankruptcy relief and retain its immunity, or it can doff the protective cloak and join the ranks of creditors seeking the benefits from the debtor's estate. That choice is not constitutionally profound, and it is in accord with one of the fundamental principles of bankruptcy.

*Id.* at 1392. It grounded its decision not only in a constitutional analysis of the language of § 106(b) in light of the Court's decision in *Seminole Tribe,* but also in the basic principle underpinning the bankruptcy system, equity. It stated:

> We start from the general premise that the law of bankruptcy is founded upon principles of equity. That foundation requires all persons or entities in the same class to be treated alike. Thus, creditors coming to the bankruptcy court for relief expect they will fare no better or worse than others of their

stature. Moreover, the whole concept of bankruptcy cannot succeed without a careful application of these principles and a forthright dedication to their significance.

*Id.* at 1389.

We agree wholeheartedly with the Tenth Circuit's interpretation of the waiver language contained in § 106(b). There is a distinct difference between a blanket abrogation, such as is contained in § 106(a), which does not premise the absence of Eleventh Amendment immunity on any action by the state, and the waiver language of § 106(b), which premises the loss of Eleventh Amendment immunity upon an affirmative action by the state to take advantage of, and participate in, the bankruptcy process. It would be highly inequitable for a state to be able to reap the benefits of filing a proof of claim and receiving monies from the estate, if unlike all other creditors, it would not be liable for any amounts that it owed to the estate.

We believe that the language contained in § 106(b), which limits the waiver to a claim "that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose", clearly delineates the scope of the waiver contained in the section and limits said waiver in an equitable fashion. Because the state has chosen to enter the bankruptcy arena in order to vindicate its rights as a creditor, it must take the good with the bad, and face the possibility that its liability to the estate may exceed the amounts it claims in its proof of claim if they stem from the same transaction or occurrence.

We thus find that § 106(b) does not constitute an unconstitutional abrogation of a state's Eleventh Amendment immunity. Rather, we find that it is a strictly delineated valid waiver provision, where

---

2. The Fourth Circuit remains the only circuit court of appeals to declare § 106(b) unconstitutional. While only the Tenth Circuit, *see infra,* has expressly upheld the constitutionality of § 106(b), several others have implicitly upheld its waiver provision based upon the Supreme Court's holding in *Gardner v. New Jersey,* 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947). *See Texas v. Walker,* 142 F.3d 813, 820–23 (5th Cir.1998); *In re Platter,* 140 F.3d 676, 678–80 (7th Cir.1998); and *In re White,* 139 F.3d 1268, 1271 (9th Cir.1998).

the waiver of immunity is effected by a state's voluntary participation in the bankruptcy process, rather than by a blanket determination by Congress that immunity is abrogated regardless of a state's actions. The Bankruptcy Court's determination that § 106(b) is an unconstitutional abrogation of a state's Eleventh Amendment immunity is thus hereby **REVERSED.**

**Whether the proof of claim and the estate's claim are covered by § 106(b)**

Appellant would have this Court decide that the Bankruptcy Court committed reversible error when it refused to find that the proof of claim filed by DOH/AFASS and the claim against it by the trustee arose from the same transaction or occurrence and thus DOH/AFASS waived its sovereign immunity under the statute. The Bankruptcy Court did not decide this issue because it had held, as threshold matter, that § 106(b) was unconstitutional. We thus will not address the issue of whether the proof of claim and the trustee's claim arise out of the same transaction or occurrence and thus fall within the scope of § 106(b) and instead **REMAND** this issue for elucidation by the Bankruptcy Court in light of our holding that § 106(b) is constitutional.

**Conclusion**

Pursuant to the above discussion, the Bankruptcy Court's decision is **AFFIRMED IN PART** and **REVERSED IN PART.** This action shall be **REMANDED** for further proceedings consistent with this Opinion and Order. Judgment will be entered accordingly.

**SO ORDERED.**